The BUREAU OF NATIONAL
AFFAIRS, INC., Appellant

v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.

ENVIRONMENTAL DEFENSE FUND

v.

OFFICE OF MANAGEMENT AND
BUDGET, Appellant.

Nos. 83–1138, 83–1685.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 22, 1983.

Decided Aug. 31, 1984.

As Amended Sept. 25, 1984.

Anthony L. Young, Washington, D.C., for appellant Bureau of National Affairs, Inc., in No. 83–1138. William R. Weissman and Jane Seigler, Washington, D.C., also entered appearances for appellant Bureau of National Affairs, Inc.

Mark H. Gallant, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Leonard A. Schaitman, Atty., Dept. of Justice and Stanley S. Harris, U.S. Atty. at the time the brief was filed, Washington, D.C., were on the brief for Office of Management and Budget, appellant in No. 83–1685 and United States Department of Justice, appellees in No. 83–1138.

Barry J. Trilling, Washington, D.C., with whom Bingham Kennedy, Washington, D.C., was on the brief, for appellee, Environmental Defense Fund in No. 83–1685.

Boisfeuillet Jones, Jr. and Carol D. Weisman, Washington, D.C., were on the brief for amicus curiae, Washington Post Company in No. 83–1138 urging reversal.

Jacob C. Landau, Washington, D.C., was on the brief for amici curiae, The Reporters Committee for Freedom of the Press and The Freedom of Information Service Center in No. 83–1138 urging reversal.

Before MIKVA and EDWARDS, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

■ In these cases we are asked to decide a novel question concerning the scope of the Freedom of Information Act (FOIA or the Act): whether appointment calendars, phone logs and daily agendas of government officials are "agency records" subject to disclosure under FOIA. We conclude that appointment materials that are created solely for an individual's convenience, that contain a mix of personal and business entries, and that may be disposed of at the individual's discretion are not "agency records" under FOIA. We also hold that non-binding budgetary recommendations submitted by a federal agency to the Office of Management and Budget are protected from disclosure under Exemption 5 of FOIA.

## I. BACKGROUND

This appeal involves two separate lawsuits brought by organizations that sought disclosure of various government documents under FOIA. Because they raise similar questions concerning the meaning of the term "agency records," the two cases were consolidated for oral argument. One of the cases raises a separate issue concerning the scope of Exemption 5 of FOIA. We briefly review the background of these two lawsuits.

### A. *Bureau of National Affairs v. Department of Justice*

In 1981, the Bureau of National Affairs (BNA) filed a FOIA request with the Department of Justice (DOJ or the Justice Department) for all records of appointments and meetings between William Baxter, then Assistant Attorney General for Antitrust, and all parties outside the Justice Department. DOJ denied BNA's request on the ground that the materials were not "agency records" subject to disclosure under FOIA. Following exhaustion of its administrative remedies, BNA filed suit in the district court to compel disclosure.

Mr. Baxter's appointment materials include two types of documents. The first consists of two sets of desk appointment calendars maintained for Mr. Baxter in 1981 and 1982. One set of calendars was maintained by Mr. Baxter himself; the other was kept by his personal secretary. According to Mr. Baxter, the calendar entries "generally reflect[ed] the location of a meeting or appointment, the people expected to be present, and on occasion, the general purpose of the meeting or appointment." Declaration of William Baxter, *BNA* Joint Appendix 19. Top level assistants occasionally had access to the calendars so that they would know how to contact Mr. Baxter. The calendars included personal appointments wholly unrelated to the business of the Antitrust Division and did not always reflect changes in appointments or cancellations of meetings.

The other set of documents sought by BNA are the daily agendas which Mr. Baxter's secretary prepared and distributed to top staff within the Antitrust Division so that they would know his schedule on a given day. The staff usually destroyed these agendas at the end of each day, but Mr. Baxter's secretary retained copies for her own files.

In a short two-page decision the district court granted the government's motion for summary judgment and dismissed BNA's complaint on the ground that the requested materials were not "agency records" under 5 U.S.C. § 552(a)(4)(B). The court agreed with DOJ that the calendars and daily agendas are personal papers which "exist essentially only for the convenience of their author." The court found that the documents "were not created at the request of or for the convenience of the agency and [that] they play absolutely no role in the agency's recordkeeping program." BNA appealed this decision.

### B. *Environmental Defense Fund v. Office of Management and Budget*

The Environmental Defense Fund (EDF) requested the Office of Management and Budget (OMB) to disclose several categories of documents relating to the Environmental Protection Agency's (EPA) implementation of federal hazardous waste laws, particularly the 1980 Superfund legislation, 42 U.S.C. § 9601 *et seq.* (1982). OMB denied the request in part. Following exhaustion of its administrative remedies, EDF filed suit in district court.

Among the records requested by EDF were the appointment calendars and telephone logs of six OMB officials. One of the six officials named by EDF is no longer employed at OMB and the agency is not in possession of any of her appointment calendars or telephone logs. On appeal, EDF has not challenged OMB's "withholding" of any of that official's appointment materials. The other five employees all maintained daily appointment calendars that included both personal and business appointments. The information noted on the cal-

endars listed, at most, the participants, the location and, sometimes, the general topic of a meeting. One employee disposed of his calendars on a weekly basis. The calendar entries frequently were not edited, updated or corrected to reflect cancellations or other changes in scheduled appointments. In two cases, only the author had access to the calendar; in two other cases, only the author and the author's secretary had access to the calendar; and in the fifth case, immediate staff were permitted to consult the calendar to ascertain the official's availability. None of the employees maintained a phone log, although one of them retained for limited periods of time, yellow telephone message slips. EDF seeks those yellow slips. In an interlocutory order, a different district judge ruled that the appointment calendars and telephone logs are "agency records" and ordered OMB to submit a Vaughn index regarding those documents. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). OMB challenges that order on appeal.

Following several meetings, the parties resolved their disagreements concerning most of the documents requested by EDF. In its final order and memorandum opinion, the district court granted OMB's motion for summary judgment in part and denied it in part. The court ordered OMB to release certain documents, including papers relating to EPA's budgetary recommendations for fiscal year 1982. The court rejected OMB's claim that those documents are predecisional materials exempt from disclosure under Exemption 5 of FOIA. 5 U.S.C. § 552(b)(5). In addition to appealing the district court's order regarding the appointment materials, OMB appeals from that part of the district court's summary judgment ordering disclosure of EPA's budget recommendations. OMB claims that the documents are "predecisional" material protected by Exemption 5.

## II. ANALYSIS

### A. *Agency Records*

 Both DOJ and OMB claim that appointment materials are not "agency records" within the meaning of section 552(a)(4)(B) of FOIA. The requirement that materials sought by a private party be "agency records" is jurisdictional—only when an agency withholds an agency record does the district court have authority to compel disclosure. Specifically, the Act provides that "[o]n complaint, the district court ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). Federal jurisdiction under this provision is therefore premised upon three requirements: a "showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). Unless the calendars, agendas, and logs sought by BNA and EDF are "agency records" the district court lacks jurisdiction over their claims.

Neither the language of the statute nor the legislative history provides much guidance in fleshing out the meaning of the term "agency records." "As has often been remarked, the Freedom of Information Act, for all its attention to the treatment of 'agency records,' never defines that crucial phrase." *McGehee v. Central Intelligence Agency,* 697 F.2d 1095, 1106 (D.C.Cir.1983) (footnotes omitted), *modified in other respects,* 711 F.2d 1076 (1983). Moreover, "the legislative history yields insignificant insight into Congress' conception of the sorts of materials the Act covers." *Id.* (footnote omitted).

Nor does the case law indicate whether the appointment materials in these cases are "agency records." Most opinions in this circuit and elsewhere that focus on the meaning of the term "agency records" involved records that were created originally by entities exempt from FOIA's coverage and that later were transferred to a FOIA agency. The issue in those cases is whether a FOIA agency has "obtained" a record

concededly "created" elsewhere. *See, e.g., Lykins v. United States Department of Justice,* 725 F.2d 1455 (D.C.Cir.1984) (presentence reports that have been turned over to the Parole Commission are "agency records" even though they originated in the courts, which are not FOIA agencies); *Goland v. Central Intelligence Agency,* 607 F.2d 339, 347 (D.C.Cir.1978), *vacated in part on other grounds,* 607 F.2d 367 (D.C.Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (setting forth standards for determining "[w]hether a congressionally generated document has become an agency record"). The instant cases, however, present a totally different issue: under what circumstances can an individual's creation of a record be attributed to the agency, thereby making the material an "agency record" disclosable under FOIA, rather than personal material not covered by the Act? We turn to the case law to find the principles that should guide us in our analysis.

### 1. *Judicial interpretation of the term "agency records"*

The Supreme Court has elaborated on the meaning of the term "agency records" on two occasions. Those cases provide a starting point for our analysis. *Kissinger v. Reporters Committee for Freedom of the Press, supra,* involved three separate FOIA requests for the transcripts and summaries of Henry Kissinger's telephone conversations (telephone notes) which were maintained while he was Secretary of State and national security advisor to the President. While still serving in the State Department, Dr. Kissinger transferred the telephone notes from his office to a private location and entered into an agreement deeding those notes to the Library of Congress. Dr. Kissinger treated the notes as his own personal papers. Two of the three FOIA requests in the *Kissinger* case were filed after the telephone notes had been taken from the State Department. As to those requests, the Court did not even reach the question of whether the telephone notes were agency records, because it found that a separate jurisdictional re-

quirement of the Act had not been met: the State Department had not "withheld" anything. Because the documents had been removed from the State Department's possession prior to the filing of a FOIA request, "the agency ha[d] neither the custody nor the control to enable it to withhold." 445 U.S. at 150–51, 100 S.Ct. at 968–69.

Although the third FOIA request had been filed before the telephone notes were removed from the State Department, the Court concluded nonetheless that the documents sought in that instance were not "agency records." The Court's holding was not based on the nature of the documents themselves, but on the fact that the particular documents requested were notes of telephone conversations that Dr. Kissinger had had while he was in the Office of the President prior to becoming Secretary of State. Because FOIA does not include Presidential assistants in the definition of "agency," the records of those phone conversations were not *"agency"* records. The Court further concluded that the mere physical transfer of those documents to the State Department—an agency clearly covered by FOIA—did not by itself render them "agency records" within the meaning of FOIA. The Court explained:

> The papers were not in the control of the State Department at any time. They were not generated in the State Department. They never entered the State Department's files, and they were not used by the Department for any purpose. If mere physical location of papers and materials could confer status as an 'agency record' Kissinger's personal books, speeches, and all other memorabilia stored in his office would have been agency records subject to disclosure under the FOIA.

*Id.* at 157, 100 S.Ct. at 972. Thus, in determining whether the documents were "agency records" under FOIA, the Court focused on several factors: whether the documents were (1) in the agency's control; (2) generated within the agency; (3) placed into the

agency's files; and (4) used by the agency "for any purpose."

In a second case decided the same day as *Kissinger* the Court held that data created and held by a private organization to conduct a federally funded study are not "agency records" under FOIA. In *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980), petitioners sought disclosure under FOIA of raw data that formed the basis of a study that had been funded entirely through federal grants. Pursuant to federal regulations, the data was available upon request to the agencies that had supplied the funding. The data, therefore, had been "generated, owned and possessed by a privately controlled organization receiving federal study grants," but was available to the federal government. *Id.* at 171, 100 S.Ct. at 980. The Court refused to order the agency to exercise its right of access to the data because such an order would compel the agency to "create" a record, a result which the Court held went beyond the reach of the Act. 445 U.S. at 186, 100 S.Ct. at 987. *See also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62, 95 S.Ct. 1504, 1521–22, 44 L.Ed.2d 29 (1975) (FOIA imposes no duty on agencies to create records).

Other federal courts, including this court, have applied the principles set forth in *Kissinger* and *Forsham* on numerous occasions. The parties contend that two distinct approaches to the definition of "agency records" have developed in the case law. The first involves a control or possession test in cases where a document is created by one agency, but, as in *Kissinger*, is subsequently transferred to, or physically located within, another agency. In deciding whether the second agency has "obtained" the document, the courts have focused on the extent to which that agency exercised control over and possession of the document. *See, e.g., Wolfe v. Department of Health and Human Services*, 711 F.2d 1077, 1079–80 (D.C.Cir.1983); *McGehee*, 697 F.2d at 1108–09. Under the second approach, the ultimate focus of the court's inquiry is on the function or use of the document within the agency. *See, e.g.,*

*Illinois Institute for Continuing Legal Education v. United States Department of Labor*, 545 F.Supp. 1229, 1233–34 (N.D. Ill.1982).

Contrary to the parties' suggestion, the cases cannot be compartmentalized rigidly into either a "control" or a "use" analysis. Instead, as was suggested by the Court in *Kissinger*, the inquiry necessarily must focus on a variety of factors surrounding the creation, possession, control, and use of the document by an agency. *See Crooker v. United States Parole Commission*, 730 F.2d 1, 5 (1st Cir.1984) (" 'control' for FOIA purposes [may have] no precise definition and may well change as relevant factors assume varying importance from case to case."). In certain contexts, such as where a document is created by one agency and transferred to a second agency, control or possession is the critical analysis. But in cases such as these, where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA.

■ The government urges us to reject any analysis based on the use of a document within an agency and asks us to rely entirely on the extent to which an agency possesses or exercises control over a document. It cites to a portion of the *Forsham* opinion where the Court dismissed petitioners' argument that the agency's *reliance* on the information held by the grantees transformed the data into "agency records." Because the records had been created by a private party, the Court emphasized that the government agency lacked possession or control over those records: "[W]ithout first establishing that the agency has created or obtained the document, reliance or use is ... irrelevant." 445 U.S. at 186, 100 S.Ct. at 987. The government reads too much into that statement. The Court made clear that "[r]eliance or use may well be relevant ... to the question of whether a record *in the possession of an agency* is an 'agency record,' " *Id.* at 177 n. 7, 100 S.Ct. at 982

n. 7 (emphasis added). Moreover, in *Kissinger,* the Court considered the fact that the telephone notes "were not used by the Department for any purpose." 445 U.S. at 157, 100 S.Ct. at 972. Under the circumstances presented here—where a record is created by an employee of a FOIA agency, at least in part to enable him or her to conduct agency business—it is necessary to consider both the agency's asserted interest in the document and the extent to which the document is used to conduct agency business.

This result is consistent with our prior decisions in this area. In *Wolfe v. Department of Health and Human Services, supra,* we focused primarily on the agency's control and possession of the requested document, but also inquired into the agency's use of that document. The question presented in *Wolfe* was whether a report prepared by President-elect Reagan's transition team concerning the Department of Health and Human Services (HHS) was an "agency record." Because the transition team was not a FOIA agency, our analysis was based solely on whether HHS "obtained" the report after it had been created. 711 F.2d at 1079 n. 4. We inquired into HHS' possession and control of the report and, relying on *Forsham,* we looked to see if there was "some 'nexus' between the agency and the documents other than the mere incidence of location." *Id.* at 1080. In that context we found it relevant that the individual who brought the report into the agency, like Dr. Kissinger, never "integrate[d] the documents with agency files or records." *Id.* at 1080. We also noted that no employee "ever used or consulted" the document except in preparation for the FOIA litigation. 711 F.2d at 1078. *See id.* at 1081 (distinguishing *Ryan v. Department of Justice,* 617 F.2d 781 (D.C. Cir.1980) because the documents there "were intended to be used by the Attorney General to execute Justice Department business.").

In *Wolfe,* we cited with approval Judge Prentiss Marshall's opinion in *Illinois Institute for Continuing Legal Education v. United States Department of Labor,* 545 F.Supp. 1229 (N.D.Ill.1982). In *Illinois Institute,* Judge Marshall concluded that a briefing book on the Labor Department, which had been prepared by President-elect Reagan's transition team, was not an "agency record." He focused not only on the question of control or possession of the document by Secretary Donovan, but also on the use of the document within the agency:

> [T]he fact that the head of the Department controls the record does not mean that the record is automatically a departmental record. If that were the case, the distinction between the personal papers of the Secretary and the agency's papers would be obliterated.
>
> . . . .
>
> To be "agency records," something more than mere possession of the records by an agency official must be shown. Some nexus between the agency's work and the records must be established.

*Id.* at 1233–34. Judge Marshall applied a use test to determine the status of the document: "[T]he requisite nexus between the agency and the record is present only if the record was prepared or actually used by an agency official in connection with his duties." *Id.* at 1234–35.

The government argues that we rejected a use test for determining whether a document is an "agency record" in *McGehee v. Central Intelligence Agency, supra.* In *McGehee,* a relative of three victims who died at "People's Temple" in Jonestown, Guyana, filed a FOIA request with the Central Intelligence Agency (CIA) for documents relating to various aspects of the community led by Jim Jones. One of the issues on appeal was whether the documents obtained by the CIA from the State Department and the Federal Bureau of Investigation were "agency records" of the CIA. We concluded that they were. In prior cases, this court and others had held that, where documents originate within the Congress, the judiciary, and FOIA-exempt executive agencies, sometimes "special poli-

cy considerations militate against a rule compelling disclosure of [such] records ... merely because such documents happen to come into the possession of an agency." *Id.* at 1107. Where the originating agency, however, is also covered by FOIA—as was the case in *McGehee*—we held that transfer of such documents to another FOIA agency did not alter their status as "agency records." Otherwise, agencies could shield themselves from FOIA by transferring documents to a different government department. *Id.* at 1109. We therefore concluded that "all records *in an agency's possession,* whether created by the agency itself or by other bodies covered by the Act, constitute "agency records." *Id.* at 1109 (footnote omitted) (emphasis omitted in part).

The government places particular emphasis on footnote sixty-three of the *McGehee* opinion to argue that an agency's use of a document is never relevant in determining the document's status as an "agency record." That footnote states:

It might be argued that these policies [underlying FOIA] would be promoted equally well by a rule that all records in an agency's possession (whether created by itself or by other departments covered by the Act) of which the possessor had made some *use* constitute "agency records." ... The defect in this alternative *more restrictive standard* is that it often would be difficult if not impossible for a requester to prove that an official of the agency had indeed relied in some way on a particular document .... *[T]he net effect of the alternative rule would be to deny the public access to many documents that had in fact contributed to the thought and action of agency officials.*

*Id.* at 1109 n. 63 (emphasis added). This footnote must be read in the factual context of the *McGehee* case, where the documents had been created by one FOIA agency and later were obtained by another FOIA agency. In the instant cases, the documents were created by officials within the agencies that have been sued. The distinction between documents created

within an agency and documents originating outside the agency is extremely important, for our concern in footnote sixty-three was that, in the context of a document transferred from one agency to another, the use test would be overly restrictive and would permit agencies to avoid the commands of FOIA. The receiving agency could simply house the documents and assert that the documents were not being used, while the originating agency could claim that it had "neither the custody nor the control to enable it to withhold." *Kissinger,* 445 U.S. at 150–51, 100 S.Ct. at 968–69.

Here, reliance solely on a possession or control test could be the more restrictive approach. An "agency" may choose not to assert any control over a particular document, but an employee who created that document for the express purpose of enabling him to perform his duties certainly retains possession and control over the document. The issue is not simply whether the agency as an institution has taken steps to "obtain" the document. Rather, the question presented by these cases is whether, when an employee creates a document, that creation can be attributed to the agency under FOIA.

 Under the case law, it is clear that, at least in some circumstances, the agency's use of a document is relevant for determining its status as an "agency record." Where, as here, a document is created by an agency employee, consideration of whether and to what extent that employee used the document to conduct agency business is highly relevant for determining whether that document is an "agency record" within the meaning of FOIA. Use alone, however, is not dispositive; the other factors mentioned in *Kissinger* must also be considered: whether the document is in the agency's control, was generated within the agency, and has been placed into the agency's files. 445 U.S. at 157, 100 S.Ct. at 972. Our inquiry must therefore focus on the totality of the circumstances surrounding the creation,

maintenance, and use of the document to determine whether the document is in fact an "agency record" and not an employee's record that happens to be located physically within an agency. *See id.* at 157, 100 S.Ct. at 972.

■ In particular, the statute cannot be extended to sweep into FOIA's reach personal papers that may "relate to" an employee's work—such as a personal diary containing an individual's private reflections on his or her work—but which the individual does not rely upon to perform his or her duties. *See Wolfe,* 711 F.2d at 1081. In this regard, use of the documents by employees other than the author is an important consideration. An inquiry is therefore required into the purpose for which the document was created, the actual use of the document, and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency.

In adopting this analysis, we reject the government's invitation to hold that the treatment of documents for disposal and retention purposes under the various federal records management statutes determines their status under FOIA. Those statutes prescribe how federal agencies are to create, dispose of, and otherwise manage documents and other material. *See, e.g.,* Federal Records Act of 1950, 44 U.S.C. § 2901 *et seq.* (1976 & Supp. V 1981); Records Disposal Act, 44 U.S.C. § 3301 *et seq.* (1976 & Supp. V 1981); Presidential Records Act of 1978, 44 U.S.C. § 2201 (Supp. V 1981). However tempting such a "bright line" test may be, it cannot be used as the divining rod for the meaning of "agency records" under FOIA. In *Forsham,* the Court looked to the records statutes for further support for its holding that the data held by the grantees were not "agency records" under FOIA. 445 U.S. at 183–84, 100 S.Ct. at 985–86. But the Court warned that the definitions in those statutes "are not dispositive of the proper interpretation of congressional use of the word in the FOIA ...." *Id.*

■ The government would have us ignore that warning and rely solely on the agencies' treatment of the documents under their records disposal regulations and policies to determine the status of those documents under FOIA. Rigid adherence to the records disposal regulations to determine the status of a document under FOIA, however, would contradict the policy of disclosure underlying FOIA. Although an agency's treatment of documents for preservation purposes may provide some guidance to a court, an agency should not be able to alter its disposal regulations to avoid the requirements of FOIA. Moreover, the Supreme Court expressly left open the question presented by the instant cases. The materials sought in these cases are classified as "non-record materials" under the federal records management statutes. *See* 44 U.S.C. § 2901 *et seq.* "Non-record materials" do not have to be preserved under federal law, but must be disposed of in accordance with applicable regulations. While holding that FOIA does not require an agency to "create or retain" documents, the Supreme Court expressly left open the question of whether "non-record materials" are "agency records" under the FOIA and thus subject to disclosure. *Forsham,* 445 U.S. at 183 n. 14, 100 S.Ct. at 985 n. 14. While an agency's treatment of the documents pursuant to its record retention and disposal obligations is relevant for determining the documents' status under FOIA, we refuse to apply a rigid test that removes all non-record materials from FOIA's coverage.

We also note that our analysis is not based upon the rationale set forth in two district court opinions relied upon by the government. All of the cases we have discussed required the courts to determine whether an agency had obtained a document from another entity. The question presented here, however, is whether a document *created by an agency employee* is an "agency record" within the meaning of FOIA. Two district courts have considered that question and have concluded that handwritten notes, that were created by an

agency employee and that reflected his impressions of substantive discussions and meetings held in the course of agency business, are not "agency records." *See British Airports Authority v. Civil Aeronautics Board,* 531 F.Supp. 408 (D.D.C.1982); *Porter County Chapter of the Izaak Walton League of America v. United States Atomic Energy Commission,* 380 F.Supp. 630 (N.D.Ind.1974). The district court in *British Airports* expressly relied upon the "rationale and the result of the Porter County decision . . ." in reaching its result and quoted from that opinion at length. 531 F.Supp. at 416. We therefore turn to the opinion in that case.

■ The court's analysis in *Porter County* was based entirely on the *content* of the notes, not on the agency's control, possession or use of the notes. A fair reading of *Porter County* suggests that the court was applying policies underlying the FOIA exemptions in concluding that the documents were not "agency records." In particular, the court was concerned primarily with the potential chilling effect that disclosure of handwritten notes might have on the activities of government employees:

> Disclosure of such personal documents would invade the privacy of and impede the working habits of individual staff members; it would preclude employees from ever committing any thoughts to writing which the author is unprepared, for whatever reason, to disseminate publicly. Even if the records were "agency records," their disclosure would be akin to revealing the opinions, advice, recommendations and detailed mental processes of government officials. Such notes would not be available by discovery in ordinary litigation.

380 F.Supp. at 633. We question the analysis relied upon by the court in *Porter County.* The policy concerns underlying the court's opinion are addressed more appropriately to the applicability of particular exemptions, such as Exemption 5, to the requested material. The term "agency records" should not be manipulated to avoid the basic structure of the FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies. *See* Note, *The Definition of "Agency Records" Under the Freedom of Information Act,* 31 Stan.L.Rev. 1093, 1099 (July, 1979) ("restricting the definition of 'record' to material with a certain content also might be seen as improperly expanding the Act's exemptions.").

In determining the status of the appointment materials requested in these cases, we conclude that it is necessary to look at the circumstances surrounding the creation, maintenance and use of the documents within the agency. In particular, we must focus on the four factors outlined by the Court in *Kissinger:* whether the document was generated within the agency, has been placed into the agency's files, is in the agency's control, and has been used by the agency for an agency purpose. We turn now to the application of that analysis to the documents requested by BNA and EDF.

### 2. *Appointment materials as "agency records"*

Three categories of appointment materials are sought in these cases: yellow telephone message slips; appointment calendars; and daily agendas indicating Mr. Baxter's schedule that were distributed to staff within the Antitrust Division of the Justice Department. All of these materials share three common attributes that are relevant for our analysis. First, all of these materials were "generated" within the agencies. *Kissinger,* 445 U.S. at 157, 100 S.Ct. at 972. They were prepared on government time, at government expense and with government materials, including the blank appointment calendars themselves. In several cases, the officials' personal secretaries maintained the appointment records as part of their official agency duties. Second, the materials have not been placed into agency files. Third, both DOJ and OMB permit their employees to dispose of these "non-record materials" at

their discretion. Thus, the agencies have not sought to exercise any institutional control over appointment documents, although they could do so under the applicable statute and regulations. *See* 44 U.S.C. § 3301 *et seq.;* General Services Administration General Records Schedule 23 (1982). The government argues that this indicates that the agencies have not "obtained" the documents from their individual employees. In the context of these cases, however, the question is whether the employee's creation of the documents can be attributed to the agency for the purposes of FOIA, regardless of whether the agency requires employees to retain the documents. The government is correct, however, in one respect. Because FOIA does not require an agency to create or obtain a record, so long as the records disposal regulations permit destruction of "non-record materials" at the discretion of an agency or agency employee, documents will be available under FOIA solely based on whether an individual has chosen to keep those documents.

We now turn to the three categories of documents to analyze, in particular, how the documents are used within the agency.

### a. *Telephone message slips*

EDF requested the telephone logs of certain OMB officials. No such logs existed, but one OMB official kept his yellow telephone message slips for short periods of time and disposed of them intermittently on a haphazard basis. The official indicated that the slips "contain[ed] no substantive information." Presumably they indicated the name of the caller, the date and time of the call and, possibly, a telephone number where the caller could be reached. The purpose of creating these documents was to inform the official of any calls he had received while he was away from his office. The slips do not indicate why the call was made and, most importantly, whether the call was personal or related to official agency business.

■ It is clear that these slips are not "agency records" within the meaning of FOIA. No substantive information is contained in them. No one but the official for

whom the messages were taken used the telephone slips in any way. And, in many cases, there might be no way for the official to segregate personal from business calls.

### b. *Daily agendas*

Mr. Baxter's secretary at DOJ created daily agendas indicating Mr. Baxter's schedule. She circulated these agendas to certain members of Mr. Baxter's staff. Although the staff threw out the agendas regularly, Mr. Baxter's secretary maintained copies in her desk, apparently in the absence of any instructions to the contrary. The purpose of the agendas was to inform the staff of Mr. Baxter's availability; they facilitated the day-to-day operations of the Antitrust Division.

■ Unlike the telephone slips, the daily agendas are "agency records" within the meaning of FOIA. They were created for the express purpose of facilitating the daily activities of the Antitrust Division. Even though the agendas reflected personal appointments, they were circulated to the staff for a business purpose. The agency can segregate out any notations that refer to purely personal matters. The daily agendas, unlike the appointment calendars, were not created for Mr. Baxter's personal convenience, but for the convenience of his staff in their conduct of official business.

### c. *Appointment calendars*

The appointment calendars are the most difficult to categorize. The purpose of the calendars was to facilitate the individuals' performance of their official duties and to organize both their business and personal activities. Unlike the telephone slips, the calendars often gave some indication of the topic of a particular meeting, as well as the location and identity of the participants. Furthermore, it would be much easier to segregate the personal appointments from the business appointments than it would be with the case of a telephone message. In the case of Mr. Baxter and at least one OMB official, immediate staff had access to

**1496**

the calendars to determine the officials' availability. In that sense, the calendars were similar to the daily agendas.

■ We conclude, however, that these particular appointment calendars are not "agency records." They are distinguishable from the daily agendas in two important respects. First, they were not *distributed* to other employees, but were retained solely for the convenience of the individual officials. Second, the daily agendas were created by Mr. Baxter's secretary *for the express purpose* of informing other staff of Mr. Baxter's whereabouts during the course of a business day so that they could determine Mr. Baxter's availability for meetings. Thus the daily agendas were created for the purpose of conducting agency business. In contrast, the appointment calendars were created for the personal convenience of individual officials so that they could organize both their personal and business appointments.

■ The inclusion of personal items in the appointment calendars buttresses the conclusion that the calendars were created for the personal convenience of the individual employees, not for an official agency purpose. The inclusion of personal information does not, by itself, take material outside the ambit of FOIA, for personal information can be redacted from the copies of documents disclosed to a FOIA requester. But the presence of such information may be relevant in determining the author's intended use of the documents at the time he or she created them. Here, the appointment calendars were created for the personal convenience of individual officials in organizing both their personal and business appointments. Neither OMB nor DOJ required its employees to maintain such calendars. FOIA's reach does not extend to such personalized documents absent some showing that the agency itself exercised control over or possession of the documents. In contrast, the daily agendas were created and distributed to staff solely for their use in determining Mr. Baxter's availability for meetings. The personal information contained in the agendas is identical to that found in Mr. Baxter's appointment calendars and may be redacted from the copies made available to BNA.

We hold that, with the exception of the daily agendas that were distributed within the Antitrust Division, the appointment materials requested by EDF and BNA are not "agency records" within the meaning of FOIA. Our conclusion might be different if the agencies had exercised any control over the materials or if the documents had been created solely for the purpose of conducting official agency business. On the facts presented here, however, these documents are not "agency records."

**B.** *Exemption 5 and the Budget Documents*

OMB also challenges the district court's holding that it must disclose material submitted by EPA to OMB concerning EPA's budget recommendations. The materials at issue reflected EPA's assessment of its funding needs for Superfund in Fiscal Year 1982. The budget figures actually proposed by the President to the Congress several months later differed from EPA's recommendations. OMB argues that, because the President bears the ultimate responsibility for submitting a final budget proposal to the Congress, any recommendations made to him by the agencies are predecisional, deliberative interagency memoranda exempt from disclosure under 5 U.S.C. § 552(b)(5). We agree.

■ Section 552(b)(5) of the FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The purpose of this exemption is to incorporate the government's common law privileges in the civil discovery context into FOIA. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). Among the privileges covered by Exemption 5 is the executive privilege regarding the government's deliberative process. Advice, recommendations and

opinions that are part of the decision-making process of the government are protected from disclosure under Exemption 5 so long as they are "predecisional"—*i.e.*, they actually precede adoption of agency policy. *Sears*, 421 U.S. at 151–53, 95 S.Ct. at 1516–17; *Jordan v. United States Department of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978) (en banc). The purpose of Exemption 5 is "to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity [that might] ... inhibit frank discussion of policy matters and likely impair the quality of decisions." *Ryan*, 617 F.2d at 789–90 (footnote omitted). The burden is on the government to show that the material is predecisional.

The district court concluded that EPA's budget recommendations which it submitted to OMB "do[ ] not appear to be predecisional in that the information comprises apparently a final decision by EPA concerning its fiscal year 1982 budget request." *EDF* Joint Appendix 105. The court misconceives what constitutes a "final decision" in the context of Exemption 5. EPA's final decision here was a decision to make a particular recommendation to another agency of the government that has ultimate authority for developing the President's budget proposals. In *Renegotiation Board v. Grumman Aircraft*, 421 U.S. 168, 187–88, 95 S.Ct. 1491, 1501–02, 44 L.Ed.2d 57 (1975), the Supreme Court held that views submitted by one agency to a second agency that has final decisional authority are predecisional materials exempt from disclosure under FOIA. As the Court emphasized in *Grumman*, Exemption 5 explicitly covers communications *between* agencies, not just within agencies. If we were to affirm the district court in this instance, it would be difficult to distinguish any interim recommendation or piece of advice from one policymaker to another, or at least from one agency to another. If no such recommendations were predecisional, Exemption 5 would be an empty shell.

It is undisputed that the President, not the EPA, makes the final decision concerning what budget requests should be submitted to the Congress. Moreover, the President is not bound in any way by the funding levels sought by the various agencies. Rather, their budgetary "decisions" constitute advice and suggestions for the President, albeit ones that are likely to frame the ultimate budgetary choices made by him. This is not a case where a predecisional recommendation is "expressly adopted as the basis for agency action" and therefore loses the protection of Exemption 5. *Afshar v. Department of State*, 702 F.2d 1125, 1140, 1143 (D.C.Cir.1983). EPA's budgetary recommendations were never adopted by the President.

■■■ EDF contends that OMB did not meet its burden of proving that the materials sought were "deliberative." Furthermore, EDF claims that, even if the materials were deliberative, the agency failed to meet its burden of segregating disclosable facts from exempt portions of the budget documents. *See Ryan v. Department of Justice*, 617 F.2d 781, 790–91 (D.C.Cir. 1980). To sustain its burden of proof an agency may file affidavits that show "with reasonable specificity" why a particular exemption applies. *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C. Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). "The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Id.*

The district court initially agreed with EDF that the affidavits filed by OMB were inadequate. It ordered the agency to submit a revised *Vaughn* index to justify nondisclosure of the materials requested by EDF and to provide particularized descriptions of each agency record. Following OMB's compliance with that order, the court concluded that the government's affidavit "contain[ed] a thorough analysis of each document and [that] there [we]re no 'sweeping' claims of exemption." *EDF* Joint Appendix 107. Moreover, the court

determined that *in camera* inspection was unnecessary because OMB had demonstrated that "all segregable factual material ha[d] been released with respect to" the documents at issue in this appeal. *EDF* Joint Appendix 106.

 We have reviewed the affidavit filed by OMB and uphold the district court's findings concerning the adequacy of the affidavit. OMB has "made a detailed showing of the applicability of the deliberative process ground of Exemption 5 and [ ] there is no contradictory evidence or evidence of [agency] bad faith ...." *Center for Auto Safety v. Environmental Protection Agency*, 731 F.2d 16, 23 (D.C. Cir.1984) (quoting *Brinton v. Department of State*, 636 F.2d 600, 636 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981)). Nor did the district court abuse its discretion in deciding that an *in camera* inspection of the documents was unnecessary. *See id.* at 20 (Congress intended to "leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge."). The affidavit filed by OMB is sufficient to uphold a finding that the documents at issue on appeal are predecisional deliberative material protected from disclosure under Exemption 5.

CONCLUSION

With the exception of the daily agendas circulated within the Antitrust Division, none of the appointment materials requested in these cases are "agency records" within the meaning of FOIA. The judgment of the district court in *BNA* is therefore affirmed in part and reversed as to the daily agendas. The district court's order in *EDF* holding that the appointment materials are "agency records" is reversed in its entirety. We also reverse the district court in *EDF* as to the applicability of Exemption 5 to the budgetary recommendations submitted by EPA to the Office of Management and Budget. Because those recommendations constitute predecisional deliberative material, the agency can withhold them under Exemption 5.

*It is so ordered.*