The NATION MAGAZINE, Washington
Bureau, and Max Holland,
Plaintiffs,

v.

UNITED STATES CUSTOMS
SERVICE, Defendant.

Civil Action No. 94–00808 (CRR).

United States District Court,
District of Columbia.

Aug. 26, 1996.

Katherine A. Meyer and Kimberley Walley, Meyer & Glitzenstein, Washington, D.C., for Plaintiffs.

Charles F. Flynn, Assistant United States Attorney, with whom John D. Bates, Assistant United States Attorney, and Eric H. Holder, Jr., United States Attorney, appeared on the briefs, for Defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court in the above-captioned case are the defendant's Renewed Motion for Summary Judgment and the plaintiffs' Opposition thereto. This case, on remand from the Court of Appeals for the District of Columbia Circuit, concerns the plaintiff's 1992 request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, for records held by the United States Customs Service regarding offers from then-Presidential candidate H. Ross Perot to assist the Customs Service in its drug interdiction efforts.

The Court of Appeals directed this Court to make findings regarding the adequacy of Customs' search and to balance the privacy and public interests implicated by the disclosure of responsive records in its investigatory files, the existence of which Customs refused to confirm or deny. Upon careful consideration of the parties' pleadings, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall deny in part the defendant's Motion for Summary Judgment with regard to the adequacy of Customs' search for responsive records, and the Court shall grant in part the defendant's Motion for Summary Judgment with regard to the defendant's refusal to confirm or deny the existence of certain records in its investigatory files which would reveal whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation.

## BACKGROUND

Following is a brief description of the facts and procedural history of this case, which are set forth more fully in *Nation Magazine v. Customs Service,* No. 94–808, Mem. Op. (D.D.C. July 29, 1994), and in *Nation Magazine v. Customs Service,* 71 F.3d 885 (D.C.Cir.1995).

On November 14, 1992, the plaintiffs filed a FOIA request with the Customs Service seeking documents pertaining to Mr. Perot (or persons identified as his employees, consultants, or advisors) maintained in Customs' Washington D.C. headquarters or in Customs' Miami, Florida and Houston, Texas field offices. The plaintiffs stated that they were "especially interested in documents and records that pertain to offers by Mr. Perot to assist the Customs Service in the interdiction of illegal drugs."

Relying on Exemption 7(C) to the FOIA, Customs refused to confirm or deny the existence of any records regarding Mr. Perot in Customs' investigatory files, and Customs informed the plaintiff that it failed to locate responsive records in certain non-investigatory files searched by Customs. The plaintiffs filed their Complaint on April 12, 1994, and this Court granted summary judgment in favor of Customs by Order dated July 29,

1994, on the grounds that Customs conducted an adequate search of the non-investigatory files and that Exemption 7(C) to the FOIA permitted Customs' refusal to confirm or deny the existence of investigatory files relating to Mr. Perot or his associates. *See Nation Magazine*, No. 94–808, Mem. Op. (D.D.C. July 29, 1994). On appeal, the Court of Appeals reversed this Court's holdings on both the adequacy of Customs' search and the applicability of Exemption 7(C). *See Nation Magazine*, 71 F.3d at 896.

The defendant filed a Renewed Motion for Summary Judgment on April 22, 1996, along with the Declaration of Marvin Amernick, Acting Chief in the Disclosure Law Branch of the Customs Service. Customs did not conduct an additional search for records. Instead, Customs described in the Amernick Declaration the system of records maintained by Customs and the search previously conducted for records responsive to the plaintiffs' FOIA request. Customs also confirmed that there are no records in its investigatory files "responsive to the Plaintiff's request for information concerning Mr. Perot's endeavor to assist Customs in its drug interdiction responsibilities," yet Customs continued its refusal to confirm or deny the existence of certain records in its investigatory files which would reveal whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation.

On May 2, 1996, the plaintiffs filed their Opposition along with the Second Supplemental Affidavit of plaintiff Maxwell Holland. The plaintiffs also noticed the deposition of Mr. Amernick. The defendant filed a Motion for Protective Order which the Court granted, by Order dated May 24, 1996, pending the Court's consideration of the defendant's Renewed Motion.

On June 21, 1996, the plaintiffs filed the Affidavit of Frank Chadwick in further support of the plaintiffs' Opposition to the defendant's Renewed Motion for Summary Judgment. Mr. Chadwick is a former Customs employee who has stated that he authored a document responsive to the plaintiffs' request (the "Chadwick Memorandum"). The government did not locate or produce the Chadwick Memorandum pursuant to Customs'

search. In his affidavit, Mr. Chadwick described Customs' recordkeeping practices and provided information which he asserts would be useful in locating the Chadwick Memorandum. Among other things, this information includes the code name for the project and the names of Customs officials who allegedly received the Memorandum.

## DISCUSSION

I.  **THE COURT SHALL DENY IN PART CUSTOMS' RENEWED MOTION FOR SUMMARY JUDGMENT BECAUSE CUSTOMS HAS FAILED TO DEMONSTRATE THE ADEQUACY OF ITS SEARCH; THE COURT SHALL DIRECT CUSTOMS TO FILE AN ADDITIONAL PLEADING AND TO CONDUCT AN ADDITIONAL SEARCH.**

The Court of Appeals directed this Court to make two findings on remand regarding the adequacy of Customs' search. First, did Customs make "an adequate search of files other than its reading files?" *Nation Magazine*, 71 F.3d at 891. Second, did Customs present "an adequate justification for not searching the reading files which it maintains in its headquarters?" *Id.* Based on the Court's careful reading of the Court of Appeals' Opinion in conjunction with the Amernick declarations, Customs has failed to demonstrate that it conducted an adequate search of files other than its reading files, and the Court finds that Customs has not presented adequate justification for not searching its chronologically organized reading files.

A.  **Customs Has Failed To Demonstrate That It Made An Adequate Search Of Files Other Than Its Reading Files.**

■ The Amernick Declaration is more detailed than those declarations submitted by Customs prior to the Court of Appeals' decision in this case. However, Customs' most recent declarations are conclusory and somewhat confusing, and they fail to answer the questions raised by both the Court of Appeals and the plaintiffs. For example, the

Court of Appeals held that Customs must "describe its recordkeeping system in sufficient detail to permit [the Court] to identify what subject matter files, other than those in the Privacy Act System of Records, might hold responsive information regarding Perot's offers to help Customs with its drug interdiction efforts." *Id.* at 891. Customs stated that it searched "all ... subject matter records" located in the field offices at issue, Amernick Decl. ¶ 28; however, Customs failed to make such a statement with respect to any subject matter files which may exist at Customs' headquarters. The Court cannot rule as to the adequacy of Customs' search until Customs informs the Court and the plaintiffs whether subject matter files exist at headquarters and, if so, whether such files have been searched for responsive records. If Customs has not searched all subject matter files at headquarters, Customs should either conduct such a search or should identify the subject matter files that exist and justify its reason for not searching those files.

Customs must also address whether any other files exist outside of the Privacy Act System of Records and the reading/"chron" files. If such files do exist, Customs must explain whether such files have been searched and, if not, Customs must justify not doing so.[1] The Amernick declarations do not clearly establish what, if any, files exist outside of the Privacy Act System of Records and the reading files.

■■■ Moreover, based on Customs' and the plaintiffs' affidavits and declarations, it is apparent that certain "personal" copies of documents may exist in Customs' files.[2] The government argues, incorrectly, that personal copies of documents cannot be subject to the FOIA. To the extent that the records were generated by an agency subject to the FOIA in the course of that agency's business purpose, and the records are in the custody of Customs, then they are "agency records" which are subject to the FOIA. *See Bureau of Nat'l Affairs v. Department of Justice,* 742 F.2d 1484, 1492 (D.C.Cir.1984).

■■■ Finally, a review and comparison of the Chadwick declaration and the First and Second Amernick Declarations indicates that Customs may not have conducted the reasonable inquiry necessary to locate the documents at issue. The plaintiffs have requested records relating to an alleged proposal or project that took place approximately fifteen years ago. A reasonable and good faith search for such documents necessitates that Customs make an inquiry of a Customs employee who would have been in a position at the time of the alleged project to have knowledge of such a project, or who would have been involved with such a project, so that Customs might perform a fruitful search—especially in light of Customs' alleged difficulties in searching its files without specific internal referencing information. Of course, the reasonableness of Customs' search must be assessed on a case-by-case basis, and the effectiveness of a search will almost always be related to the specificity of the FOIA request itself.[3] Here, the plaintiffs did reference a critical document in their request—the Chadwick Memorandum—and a reasonable search would necessarily require searching files relating to Mr. Chadwick which were created during the period he authored

---

1. Customs does state that the investigative record system within the Privacy Act System—the Treasury Enforcement Communications System (TECS)—"is the most appropriate record system maintaining records" requested by the plaintiffs, but this statement is simply too conclusory for the Court to accept without a full description of the files maintained at Customs' headquarters.

2. Customs assumes that personal copies of records would have been destroyed, but it is apparent that Customs may not have conducted any search for said records outside the search of the Privacy Act System of Records. *See* Second Amernick Decl. ¶ 7 ("[T]he personal files of retired employees are technically not agency records

and are *usually* taken by the retiring employee or destroyed by him/her.... [T]he records are *usually* destroyed by Customs....") (emphasis added). Customs merely states that during the search that was conducted, which may have only involved a search of the Privacy Act System of Records, "no personal records of Mr. Chadwick were located...." *Id.*

3. For example, had the plaintiff's initial FOIA request contained the specificity of the Chadwick Declaration and the plaintiffs' most recent pleadings, then Customs' initial search may have located records responsive to the plaintiff's request.

the alleged Memorandum, as well as conducting at least a minimal good faith inquiry[4] of a Customs employee who may have worked with or supervised Mr. Chadwick to determine the possible location of files relating to Mr. Chadwick or the drug interdiction project discussed in the FOIA request. Based on the Amernick declarations, the Court is not convinced that Customs conducted such an inquiry.

Although the Court is not yet convinced that Customs has conducted an adequate search, based on the declarations filed to date, the Court will provide Customs with a final opportunity to fully describe its records systems prior to permitting any discovery by the plaintiffs. In doing so, Customs shall fully describe all of its records, including both the Privacy Act System of Records *and* those records outside the Privacy Act System of Records, maintained at its headquarters, the Miami and Houston field offices, and the Federal Records Center in Houston. Customs shall explicitly describe which records were searched, and Customs shall justify the failure to search all others.

### B. Customs Has Failed To Demonstrate That A Search Of The Reading Files For The Chadwick Memorandum Would Be Unduly Burdensome.

■ As a justification for not searching its reading files, Customs has maintained that the files are not indexed and are merely a collection of correspondence organized only by date. The Court of Appeals directed this Court, on remand, to "order Customs to search its reading files for [the Chadwick Memorandum] if it cannot provide sufficient explanation as to why such a search would be unreasonably burdensome." *Nation Magazine*, 71 F.3d at 892. Customs has presented evidence that such files are "neither indexed nor cross indexed," yet that alone does not

demonstrate that a search of the chronological reading files at Customs' headquarters[5] for the 1981 Chadwick memorandum would be too burdensome.[6] In fact, the Court of Appeals Opinion clearly assumed that the reading files are organized only by date. Accordingly, the Court shall order Customs to search the 1981 reading files at Customs headquarters for the Chadwick memorandum.

### II. PURSUANT TO EXEMPTION 7(C) TO THE FOIA, CUSTOMS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO ITS REFUSAL TO CONFIRM OR DENY THE EXISTENCE OF RECORDS WHICH REFLECT WHETHER MR. PEROT WAS A SUBJECT, WITNESS, OR INFORMANT IN A LAW ENFORCEMENT INVESTIGATION.

■ Based on Exemption 7(C) to the FOIA, which permits an agency to withhold "investigatory records compiled for law enforcement purposes," this Court upheld Customs' initial refusal to confirm or deny the existence of *any* documents in its investigatory files relating to Mr. Perot. The Court of Appeals reversed, holding that "such a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files, it would be contrary to FOIA's overall purpose of disclosure, and thus is not a permissible reading of Exemption 7(C)." The Court of Appeals noted that the disclosure of records relating to Mr. Perot's alleged offers to assist in drug interdiction, offers which Mr. Perot has publicly confirmed, do not implicate the same privacy concerns that typically arise when an individual is the subject of a law enforcement investigation. Therefore, because of the unique circumstances in this case, and because the privacy concerns

---

4. Such an inquiry would not necessarily uncover all of the information contained in the Chadwick Declaration, such as the 1986 investigation and polygraph test.

5. Reading files at "Customs Offices other than Headquarters" are retained for three years only. Amernick Decl. ¶ 11.

6. In contrast, Customs has presented evidence that the records maintained at the Federal Records Center in Fort Worth, Texas are organized only by case number; searching without a case number would require the manual review of all records maintained at the Center and would be unreasonable and burdensome.

that drive Exemption 7(C) may not be present with respect to *every* record in Customs' investigatory files regarding Mr. Perot, the Court of Appeals rejected Customs' Glomar response [7] and directed this Court to balance the interests implicated by disclosure.

■ After the Court of Appeals issued its Opinion, Customs changed its position and informed the plaintiffs and the Court "that there are no records in [Customs' investigatory files] responsive to the Plaintiff's request for information concerning Mr. Perot's endeavor to assist Customs in its drug interdiction responsibilities." Amernick Decl. ¶ 20. In doing so, Customs narrowed its Glomar response to cover only those records which indicate whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation." *Id.* The Court of Appeals' Opinion in this case supports Customs' use of this more limited Glomar response:

> Of course, Customs is also free to articulate a revised categorical rule regarding disclosure of law enforcement records if it can identify more narrowly tailored circumstances under which the balance of privacy and public interest characteristically tips in the direction of exemption ... We agree with the agency and the district court that, to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure under [*SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C.Cir. 1991) ].

*Nation Magazine*, 71 F.3d at 895–96. Accordingly, Customs' more narrowly tailored Glomar response is appropriate pursuant to Exemption 7(C), as the interests implicated by disclosure of whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation tip the scales in favor of nondisclosure.

7. Named after a secret government ocean vessel—the Hughes Glomar Explorer—which was the subject of records sought in a FOIA request, *see Phillippi v. CIA*, 546 F.2d 1009 (D.C.Cir. 1976), a "Glomar response" is a categorical refusal to confirm or deny the existence of information on a subject because to do so might reveal secret, sensitive, or embarrassing information regarding the subject.

## CONCLUSION

For the reasons discussed above, the Court shall deny in part the defendant's Motion for Summary Judgment with respect to the adequacy of the search, and the Court shall direct the defendant to conduct a further search and file an additional pleading. The Court shall grant in part the defendant's Motion for Summary Judgment with respect to the defendant's refusal to confirm or deny whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation.

The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## *ORDER*

For the reasons set forth in the Memorandum Opinion of even date herewith, it is, by the Court, this 23 day of August, 1996,

ORDERED that the defendant's Renewed Motion for Summary Judgment shall be, and hereby is, DENIED, IN PART, with respect to the adequacy of the defendant's search; and it is

FURTHER ORDERED that on or before 4:00 p.m. on October 30, 1996, the defendant shall conduct a search of the reading files at Customs headquarters for the 1981 Chadwick Memorandum and produce to the plaintiffs any responsive records or an appropriate *Vaughn* index describing any records located; and it is

FURTHER ORDERED that Customs shall file a declaration on or before 4:00 p.m. on October 30, 1996, fully describing Customs' recordkeeping systems at headquarters, the Miami and Houston field offices, and at the Federal Records System in Houston, including a description of all records maintained within and outside of its Privacy Act System of Records, and it shall explicitly state which records have been searched by Customs for responsive documents, as well as what search terms were used for each search. Such description shall address any

**46**

subject matter files maintained at headquarters, "personal" copies of Customs' records, and it shall include a detailed description of any good faith inquiry of Customs employees conducted to locate responsive records; and it is

FURTHER ORDERED that the defendant's Renewed Motion for Summary Judgment shall be, and hereby is, GRANTED, IN PART, with respect to the defendant's refusal to confirm or deny the existence of certain records in its investigatory files which would reveal whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation; and it is

FURTHER ORDERED that the plaintiffs shall file any response to the defendant's declaration, filed pursuant to this Order, on or before 4:00 p.m. on November 8, 1996, and the defendant shall file any reply on or before 4:00 p.m. on November 13, 1996.