**Karl GALLANT, Appellant,**

v.

**NATIONAL LABOR RELATIONS BOARD, Appellee.**

No. 92–5440.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 18, 1994.

Decided June 17, 1994.

Hugh L. Reilly, Kensington, MD, argued the cause and filed the briefs for appellant.

Martin Mayer Eskenazi, Atty., N.L.R.B., Washington, DC, argued the cause, for appellee. With him on the brief were Linda Sher, Acting Associate Gen. Counsel, N.L.R.B., Margery E. Lieber, Asst. Gen. Counsel for Sp. Litigation, N.L.R.B., and Eric G. Moskowitz, Deputy Asst. Gen. Counsel for Litigation, N.L.R.B., Washington, DC,

Before MIKVA, Chief Judge, and WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Karl Gallant, a disappointed FOIA requester, appeals from an order granting summary judgment in his action to obtain from the NLRB documentary records of the efforts of a Board member to secure her own reappointment. He contends on appeal that the District Court erred in ruling that the documents were not agency records, and that certain information was protected by privacy exemptions under the FOIA. Because we perceive no error in either ruling, we affirm.

## I. BACKGROUND

In 1991, as her term as a Member of the National Labor Relations Board ("NLRB" or "Board") was about to expire, Mary Miller Cracraft sent letters and faxes to a number of individuals in an attempt to secure her reappointment. Cracraft continued this correspondence until August, when she failed to be renominated to the Board. In November, Gallant, Vice–President of the National Right to Work Committee, filed a request with the NLRB under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), seeking all documents "pertaining to efforts to secure or support the renomination of Mary Cracraft to the Board" or "reflecting the use of Board facilities, equipment or vehicles in efforts to secure or support the renomination of Mary Cracraft."

The NLRB initially rejected Gallant's request, stating that the documents in question were either Cracraft's "personal records" (rather than "agency records" for purposes of the FOIA) or were exempted from disclosure on privacy grounds under FOIA Exemption 6, 5 U.S.C. § 552(b)(6). When Gallant appealed, the Board released two letters written by NLRB Chairman James Stephens to individuals in the Office of the President, urging Cracraft's renomination to prevent any slowdown in the NLRB's case processing. The Board also released a copy of the NLRB's fax log, which recorded a total of 33 faxes sent by Cracraft relating to her renomination efforts. The names of the fax recipients were redacted from the logs on privacy grounds under FOIA Exemption 6.

On April 10, 1992, Gallant filed a FOIA action in the United States District Court for the District of Columbia. On June 19, Gallant moved for production of a Vaughn Index.[1] On July 1, the district court denied the motion. The government then moved for summary judgment on July 10, 1992. After considering the parties' pleadings and affidavits from NLRB Chairman Stephens, Cracraft, Diane Byrd (Stephens's confidential assistant), and Mildred Corthon (Cracraft's confidential secretary), the district court ruled in favor of the Board.

The court first ruled that Cracraft's correspondence relating to her renomination constituted personal rather than "agency rec-

---

**1.** The name derives from *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). A Vaughn Index is typically a detailed affidavit which summarizes the documents withheld by an agency and sets forth why such documents are exempted from disclosure.

ords" under the test set out in *Tax Analysts v. United States Dep't of Justice,* 845 F.2d 1060, 1069 (D.C.Cir.1988), *aff'd,* 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). The court then concluded that the names of the fax recipients were properly redacted from the fax logs under FOIA Exemption 6, since release of the names implicated significant privacy interests and Gallant had failed to allege a public interest which outweighed those interests. Gallant challenges both of these rulings on appeal, arguing that the district court erred in granting summary judgment for the NLRB and in denying his motion for production of a Vaughn Index.

## II. ANALYSIS

### A

We review orders granting summary judgment *de novo.* In the FOIA context this requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not "agency records" or are exempt from disclosure under the FOIA. *See* § 552(a)(4)(B); *United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 n. 3, 109 S.Ct. 2841, n. 3, 106 L.Ed.2d 112 (1989). "Summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir.1980); *see also McGehee v. CIA,* 697 F.2d 1095, 1102 (D.C.Cir.1983).

As we noted above, the government submitted affidavits from NLRB Chairman Stephens, Cracraft, Diane Byrd, and Mildred Corthon in support of its motion for summary judgment. The affidavits stated that Cracraft composed the renomination correspondence herself, although she showed the documents to several colleagues at the NLRB for suggestions and review. Once she or her staff had completed typing or writing the correspondence, it was generally sent out via first class mail: some on personal stationery, some on NLRB letterhead, some at Cracraft's personal expense, some as NLRB franked mail. The remaining letters were transmitted to their recipients via an NLRB fax machine.

Cracraft kept copies of much, but not all, of her correspondence relating to her renomination efforts. She stored the letters and return correspondence in the cubbyhole of a credenza behind her desk in her office, and these documents were not intermingled with agency materials involving Board business. Cracraft did not allow other agency personnel to examine the files without her permission, although she occasionally asked her confidential assistant or chief counsel to retrieve certain materials for her, and once had her secretary arrange the correspondence for her chronologically. She took the files relating to her renomination efforts home with her when she cleared out her office following her departure.

Appellant does not dispute the content or adequacy of the government's affidavits; instead, he argues that a different legal conclusion should be drawn from the facts developed therein. In particular, he urges us to hold that the use of NLRB equipment and involvement of NLRB personnel in Cracraft's renomination campaign renders all of the Cracraft correspondence "agency records" within the meaning of the FOIA. We do not find those facts controlling.

Under 5 U.S.C. § 552(a)(4)(B), a disclosure action under FOIA will lie only on a showing that an agency has "(1) 'improperly;' (2) 'withheld;' (3) 'agency records.'" *Kissinger v. Reporters Committee,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). While the statute itself does not indicate the types of documents that constitute "agency records" within the meaning of the Act, *see Paisley v. CIA,* 712 F.2d 686, 692 (D.C.Cir.1983), case law makes clear that "the term 'agency records' is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency." *Tax Analysts,* 492 U.S. at 145, 109 S.Ct. at 2848. Nor does the statute "sweep into FOIA's reach personal papers that may 'relate to' an employee's work . . . but which the individual does not rely upon to perform his or her duties . . . ." *Bureau of Nat'l Affairs*

*v. United States Dep't of Justice*, 742 F.2d 1484, 1493 (D.C.Cir.1984).

▮ This case requires us to determine whether Cracraft's "creation of a record [can] be attributed to the agency, thereby making the material an 'agency record' disclosable under FOIA, rather than personal material not covered by the Act." *Id.* at 1489. In other contexts, "where a document is created by one agency and transferred to a second agency, control or possession [by the withholding agency] is the critical [factor in the 'agency record'] analysis." *Id.* at 1490; *see also Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060, 1069 (D.C.Cir.1988), *aff'd*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (relevant factors in assessing whether district court decisions were documents obtained by Tax Division of Department of Justice were intent of document's creator to retain or relinquish control over records; ability of agency to use and dispose of record; extent to which agency personnel have read or relied upon document; and degree to which document was integrated into agency's files).

▮ However, "in cases ... where documents are created by an agency employee and located within the agency, *use of the document becomes more important in determining the status of the document under FOIA.*" *Bureau of Nat'l Affairs*, 742 F.2d at 1490 (emphasis added). In such cases an agency employee's creation of a document can be attributed to an agency depending on "the purpose for which the document was created, the actual use of the document, and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency." *Id.* at 1493. Thus, appellant's suggested test that employing agency resources, standing alone, is sufficient to render a document an "agency record," is inconsistent with governing precedent.

▮ On the facts before the district court at summary judgment, we reach the same conclusion that court did. The Cracraft letters were "personal records" of Mary Cracraft, and not "agency records" within the meaning of the FOIA. Nothing in the record here indicates that Cracraft created the correspondence with anything other than the purely personal objective of retaining her job. The actual use of the correspondence, and Cracraft and other employees' lack of reliance on the correspondence to carry out the business of the agency, also supports the district court's finding that the documents were not agency records. Accordingly, even though employing agency resources in the creation of the correspondence is a relevant factor in the agency record analysis, the utilization of agency resources in this case is not as significant as the other factors employed in our precedents, which compel a conclusion that the Cracraft correspondence was personal, rather than attributable to the agency.[2]

B

▮ Appellant also requests this court to order the production of a Vaughn Index, both to aid the court in determining whether the Cracraft correspondence qualifies as agency records, and as "a realistic compromise" method to obtain information regarding the recipients of the Cracraft correspondence,[3] whose privacy interest in the nondisclosure of their names he concedes for the purpose of this appeal. *See* Appellant's Reply Brief at 15–17. This we decline to do. Since "[a] court's primary focus must be on the substance, rather than the form, of the information supplied by the government to justify withholding requested information.... whether that evidence comes in the form of an *in camera* review of the actual documents, something labelled a 'Vaughn Index,' a detailed affidavit, or oral testimony

---

**2.** While the NLRB may have benefitted from Cracraft's renomination, as suggested by Chairman Stephen's letters, the mere fact that the document in question "relates to" the business of the agency does not by itself render it an agency record. *See Wolfe v. Dep't of Health & Human Serv.*, 711 F.2d 1077, 1081 (D.C.Cir.1983).

**3.** In particular, Gallant seeks us to require the agency to indicate by class the "nature" of the fax recipient: "friend," "staff employee of Congress," "labor union executive," etc.

cannot be decisive." *Vaughn v. United States,* 936 F.2d 862, 867 (6th Cir.1991). Accordingly, "[t]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." *Delaney, Migdall & Young, Chartered v. IRS,* 826 F.2d 124, 128 (D.C.Cir.1987).

The affidavits supplied by the government were sufficiently detailed to allow the district court fairly to evaluate whether the Cracraft correspondence constituted agency records within the meaning of the FOIA. The affidavits were also sufficient to allow the district court to assess whether the names of the fax recipients were exempt from disclosure under FOIA Exemption 6.

■ As the Sixth Circuit noted in a similar setting, "the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document," so long as its definitions of relevant categories are "sufficiently distinct to allow a court to determine ... whether the specific claimed exemptions are properly applied." *Vaughn v. United States,* 936 F.2d at 868 (internal quotation omitted). We consider the government under no obligation here to justify the withholding of the names of the fax recipients on an individual-by-individual basis under FOIA Exemption 6, as appellant seems to suggest, and that is the only ground upon which we could justifiably require the production of such a summary.

### III. CONCLUSION

Because we agree that Cracraft's correspondence relating to her renomination constituted personal rather than "agency records" and that production of a Vaughn Index was not necessary given the adequacy of the government's affidavits, the orders of the district court are hereby affirmed.

*It is so ordered.*