# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 25, 2006        Decided June 30, 2006

No. 05-5360

CONSUMER FEDERATION OF AMERICA,
APPELLANT

v.

DEPARTMENT OF AGRICULTURE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01788)

*Jillian M. Cutler* argued the cause for appellant. With her on the briefs was *David C. Vladeck.*

*Mercedeh Momeni*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, HENDERSON, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

Concurring opinion filed by *Circuit Judge* HENDERSON.

GARLAND, *Circuit Judge*: The question in this case is whether the electronic appointment calendars of six United States Department of Agriculture (USDA) officials are "agency records" within the meaning of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B). The Consumer Federation of America (CFA) seeks production of the calendars in an effort to discover whether the officials participated in ex parte meetings with industry representatives while a food-safety rulemaking was pending. The district court held that the calendars are not "agency records" and therefore not subject to production under FOIA. We reverse that holding with respect to five of the six calendars.

I

In February 2001, USDA's Food Safety and Inspection Service (FSIS) published notice of a proposed rule regulating exposure to Listeria, a dangerous, food-borne bacterium that can be found in ready-to-eat meat and poultry. *See* 66 Fed. Reg. 12,589 (Feb. 27, 2001). In June 2003, FSIS issued an interim final rule, *see* 68 Fed. Reg. 34,208 (June 6, 2003), that CFA regarded as significantly weaker than the proposed rule. CFA suspected that the interim final rule was the result of "'pressure from industry representatives'" applied during ex parte meetings with agency officials. *Consumer Fed'n of Am. v. USDA*, No. 04-1788, Mem. Op. at 2 (D.D.C. July 28, 2005) (quoting Pl.'s Mot. for Summ. J. at 5).

Seeking to learn whether USDA officials had "'met exclusively, or nearly exclusively, with industry representatives who favor[ed] the weakening of the original proposed rule,'" *id.* (quoting Pl.'s Mot. for Summ. J. at 5-6), CFA filed a FOIA request for "access to the public calendars" of six senior officials

for "all meetings with non-government individuals, businesses, trade associations and/or other organizations and the subject of the meetings." Letter from CFA to USDA at 1 (Aug. 18, 2004). When USDA failed to provide a substantive response within the statutory time period, CFA filed suit in district court to compel production of the calendars.

After CFA's suit and subsequent motion for summary judgment were filed, USDA notified the plaintiff that "FSIS does not maintain a public calendar for any of its personnel," but that each of the six named officials "maintained an electronic calendar on the FSIS computer system." Letter from USDA to CFA at 1 (Feb. 25, 2005). Although USDA asserted that the electronic calendars were "personal records -- not Agency records subject to disclosure under the FOIA," *id.*, it stated that the six officials had "independently volunteered to release their personal calendars, with appropriate redactions, for the periods requested." *Id.* at 2. USDA sent the redacted pages to CFA on February 25, 2005. The redactions were both extensive, blocking out the overwhelming majority of the calendar entries,[1] and inconsistent.[2] Moreover, hundreds of pages, including entire months, were not produced.[3] Because USDA did not cite any FOIA exemptions to justify the redactions, CFA argued that

---

[1]For example, selections provided in the parties' Joint Appendix show that 82 of 86 entries were redacted from USDA Under Secretary Elsa Murano's March 2003 calendar. *See* J.A. 73-80, 82-89.

[2]For example, while the October 31, 2002 calendars for Under Secretary Murano and Administrator Garry McKee disclose an 8:00 a.m. meeting with Deputy Under Secretary Merle Pierson and a representative of Tyson Foods regarding Listeria, the 8:00 a.m. entry on Pierson's calendar for the same date is redacted. *See* J.A. 55-57.

[3]*See* Waldrop Decl., Ex. A (Apr. 25, 2005) (summarizing missing calendar dates).

the court should require the agency "'to produce the remainder of the calendars (or provide a satisfactory explanation for its failure to produce them).'" *Consumer Fed'n of Am.*, Mem. Op. at 3 (quoting Pl.'s Reply Mem. at 6).

USDA cross-moved for summary judgment on March 23, 2005. In support of its motion, the agency filed affidavits from the six officials. The six were: USDA Under Secretary for Food Safety Elsa Murano, Deputy USDA Under Secretary for Food Safety Merle Pierson, FSIS Administrator Garry McKee, Deputy FSIS Administrator Linda Swacina, Acting FSIS Administrator Barbara Masters, and Assistant FSIS Administrator Philip Derfler. The affidavit filed by FSIS Administrator McKee stated:

> In order to better communicate about my availability, to prevent, among other things, double booking of periods of time, my personal calendar was shared with my Secretaries, my Special Assistant, and the FSIS Senior Management Council, which consisted of the other Assistant and Deputy Administrators for FSIS. Calendar entries were distributed to these few individuals and were in no way distributed widely within USDA or FSIS.

McKee Aff. ¶ 9. The other five affidavits employed identical language to describe how the officials' calendars were used; the only differences involved which other employees received the calendars. *See* Murano Aff. ¶ 9; Pierson Aff. ¶ 9; Swacina Aff. ¶ 9; Masters Aff. ¶ 9; Derfler Aff. ¶ 9. Four of those calendars had distribution lists of a length similar to that of Administrator McKee.[4] However, the distribution list of Assistant

---

[4]Under Secretary Murano distributed her calendar to "Terri Nintemann, Deputy Assistant Administrator for the Office of Public

Administrator Derfler, the least senior of the subject USDA officials, was considerably shorter than the others. Derfler, alone among the subject officials, distributed his calendar only to his secretary.[5]

On July 28, 2005, the district court issued an opinion concluding that "the officials' appointment calendars maintained on their personal computers are not 'agency records' within the meaning of the statute." *Consumer Fed'n of Am.*, Mem. Op. at 1-2. It therefore granted USDA's motion for summary judgment and dismissed CFA's complaint. This appeal followed.

## II

FOIA grants the district court "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Hence, the court must

Affairs, Education, and Outreach, FSIS; Dani Schor, Chief of Staff, FSIS; and the Office of the Administrator, FSIS." Murano Aff. ¶ 9. Deputy Under Secretary Pierson shared her calendar with a "Confidential Assistant, [an] Executive Assistant, . . . Special Assistants[,]" "and certain FSIS personnel such as a Deputy Assistant Administrator, Chief of Staff, and the Office of the Administrator." Pierson Aff. ¶¶ 8, 9. Deputy Administrator Swacina distributed her calendar to her "secretaries, the Assistant Administrators, FSIS, and the Under Secretary for Food Safety." Swacina Aff. ¶ 9. Acting Administrator Masters distributed her calendar to her "Chief of Staff, . . . Special Assistant, . . . Secretaries[,]" "and the FSIS Senior Management Council, which consisted of the Assistant and Deputy Administrators for FSIS." Masters Aff. ¶¶ 8, 9.

[5]Derfler declared that his calendar was shared only with "my secretary and any temporary secretaries that filled in for my permanent secretary while she was out of the office." Derfler Aff. ¶ 9.

determine whether the defendant agency has "(1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). The only question at issue on this appeal is the validity of the district court's determination that the USDA calendars are not "agency records."

We review the district court's grant of summary judgment on this question de novo. *See Students Against Genocide v. Department of State*, 257 F.3d 282, 834 (D.C. Cir. 2001). "In the FOIA context this requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not 'agency records.'" *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994); *see United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999).[6] Under FOIA, "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Gallant*, 26 F.3d at 171 (internal quotation marks omitted).

Although FOIA "limited access to 'agency records,' [it] did not provide any definition" of the term. *Forsham v. Harris*, 445 U.S. 169, 178 (1980) (internal citation omitted). We must nonetheless be careful to ensure that "[t]he term 'agency records' . . . not be manipulated to avoid the basic structure of

---

[6]Regardless of whether the agency must bear the burden of demonstrating that *any* requested document is not an "agency record," there is no dispute that it bears that burden where -- as here -- the documents were "created by an agency employee and located within the agency." *Gallant,* 26 F.3d at 172 (internal quotation marks omitted).

the FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies." *Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice*, 742 F.2d 1484, 1494 (D.C. Cir. 1984). As the Supreme Court has repeatedly reminded us, in enacting FOIA, "Congress sought to open agency action to the light of public scrutiny." *Tax Analysts*, 492 U.S. at 142 (internal quotation marks omitted); *see Department of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989); *Department of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

Mindful of this caution, our circuit has adopted a totality of the circumstances test to distinguish "agency records" from personal records. The test "focus[es] on a variety of factors surrounding the creation, possession, control, and use of the document by an agency." *Bureau of Nat'l Affairs*, 742 F.2d at 1490.[7] There is no precedent in which we have applied that test to facts directly paralleling those before us. This is due, at least in part, to the technological advances of recent years.

---

[7]*See also Tax Analysts*, 492 U.S. at 144-45 (holding that, for documents to qualify as "agency records," an agency "must either create or obtain the requested materials," and "must be in control of the requested materials" in the sense that they "have come into the agency's possession in the legitimate conduct of its official duties" (internal quotation marks omitted)); *Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d at 508, 515 (D.C. Cir. 1996) (identifying "four factors relevant to a determination of whether an agency exercises sufficient control," to wit: "'(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.'" (quoting *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd*, 492 U.S. 136 (1989))).

Both USDA and CFA agree that the precedent that is most nearly on point is *Bureau of National Affairs v. United States Department of Justice*, 742 F.2d 1484 (D.C. Cir. 1984), a case that concerns paper documents as opposed to electronically stored and retrievable data. In that case, this court considered (inter alia) whether either of two types of documents -- daily agendas and desk appointment calendars -- used by then-Assistant Attorney General for Antitrust William Baxter constituted "agency records" under FOIA. *See id*. at 1487, 1494-96. The desk calendars contained entries that "generally reflect[ed] the location of a meeting or appointment, the people expected to be present, and on occasion, the general purpose of the meeting or appointment." *Id.* at 1487 (internal quotation marks omitted). The daily agendas similarly reflected Baxter's "schedule on a given day." *Id.* In addition to agency business, both the calendars and the daily agendas listed "personal appointments wholly unrelated to the business of the Antitrust Division." *Id.* (referring to the desk calendars); *see id.* at 1496 (referring to both items).

Addressing the factors relevant to the totality of the circumstances test, the court noted a number of characteristics shared by the two types of documents. Both were created by agency employees, and both were located within (and in that sense, were within the possession of) the Justice Department. *See id.* at 1486, 1492. With respect to control, the court indicated that neither the daily agendas nor the desk calendars were "placed into agency files," *id.* at 1494, and that the Department required neither their creation nor their retention. *See id.* at 1494-96.

What ultimately distinguished the two types of documents was how they were "used within the agency." *Id.* at 1495. "The purpose of the agendas was to inform the staff of Mr. Baxter's availability; they facilitated the day-to-day operations of the

Antitrust Division." *Id.* Consonant with that function, the agendas were "distributed to top staff within the Antitrust Division so that they would know [Baxter's] schedule on a given day." *Id.* at 1487. This, *Bureau of National Affairs* held, rendered the daily agendas "agency records." *Id.* at 1495-96.

In contrast to the agendas, the desk calendars "were retained solely for the convenience of the individual official[]" in organizing his "personal and business appointments." *Id.* at 1496. Accordingly, although Baxter's top assistants "occasionally had access to the calendars," *id.* at 1487, they "were not distributed to other employees." *Id.* at 1496 (emphasis in original). This, *Bureau of National Affairs* ruled, rendered the desk calendars personal rather than "agency records." *See id.*

### III

*Bureau of National Affairs* provides the template necessary to decide this case and, in so doing, to distinguish between the calendars of five of the USDA officials and that of the sixth -- Assistant FSIS Administrator Derfler. We consider the principal factors identified in *Bureau of National Affairs* -- creation, location/possession, control, and use -- below. As we explain, use is the decisive factor here.

1. As was true of both the daily agendas and the desk calendars in *Bureau of National Affairs* -- and thus insufficient by itself to distinguish between agency and personal records -- all six USDA calendars were created by agency employees and were located within the agency (in this case, resident on its computer system). Like both Baxter's agendas and his calendars, the USDA calendars "were generated within the agenc[y]" and "were prepared on government time, at government expense and with government materials, including

the . . . appointment calendar[]" software itself. *Bureau of Nat'l Affairs*, 742 F.2d at 1494 (internal quotation marks omitted). "In the context of these cases, . . . the question is whether the employee's creation of the documents can be attributed to the agency for the purposes of FOIA." *Id.* at 1495. To answer that question, we must examine two additional factors: control and use.

2. In support of the contention that it does not control the requested calendars, USDA declares (without explanation) that neither its own regulations nor the Federal Records Act (FRA), 44 U.S.C. § 2901 et seq., *requires* its employees to create or retain the subject calendars. CFA disputes (with only slightly more explanation) the latter point, asserting that the calendars are records subject to the FRA and not disposable at an employee's discretion. Determining which position is correct -- that is, whether the USDA employees are in fact free to dispose of their calendars -- is a complicated endeavor,[8] one that both parties largely avoid.

Fortunately, we need not decide whether retention of the calendars was wholly within the officials' discretion. Although compelled retention (or creation) might well establish that a document is under USDA control, the absence of such a requirement does not resolve the issue since federal law did not

---

[8] In *Forsham v. Harris*, the Supreme Court explained that, to constitute "records" under the Records Disposal Act, 44 U.S.C. § 3301 (a term that has the same meaning under the FRA, *see* 44 U.S.C. § 2901(1)), documents must be "'made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business'" and "'preserved or appropriate for preservation by that agency . . . as evidence of the . . . activities of the Government.'" 445 U.S. 169, 183 & n.14 (1980) (quoting 44 U.S.C. § 3301) (emphasis omitted).

require the preservation (or creation) of the daily agendas in *Bureau of National Affairs*. *See* 742 F.2d at 1493-94. Indeed, in that case, we expressly "reject[ed] the government's invitation to hold that the treatment of documents for disposal and retention purposes under the various federal records management statutes determines their status under FOIA." *Id.* at 1493.[9] Although "[t]hose statutes prescribe how federal agencies are to create, dispose of, and otherwise manage documents and other material," they "cannot be used as the divining rod for the meaning of 'agency records' under FOIA." *Id.*

USDA also contends that the officials' calendars are not agency records because they were not "integrated into" the agency's files. Appellee's Br. 9. This point goes both to control and to use (which we discuss next), and was significant in *Kissinger v. Reporters Committee*. There, the Supreme Court considered whether notes of telephone conversations that Henry Kissinger made while serving as a Presidential Assistant in the Office of the President (an entity not covered by FOIA) became "agency records" when he transferred them to the State Department (an entity covered by FOIA) upon becoming Secretary of State. *See* 445 U.S. at 155-57. The Court held to the contrary:

> The papers were not in the control of the State Department at any time. They were not generated in the State Department. *They never entered the State Department's files*, and they were not used by the Department for any purpose. If mere physical location

---

[9]The referenced statutes were the Federal Records Act, 44 U.S.C. § 2901 et seq., the Records Disposal Act, 44 U.S.C. § 3301 et seq., and the Presidential Records Act, 44 U.S.C. § 2201 et seq. *See Bureau of Nat'l Affairs*, 742 F.2d at 1493.

> of papers and materials could confer status as an 'agency record' Kissinger's personal books, speeches, and all other memorabilia stored in his office would have been agency records subject to disclosure under the FOIA.

*Id.* at 157 (emphasis added).

It is not at all clear that the USDA calendars never entered the agency's "files" in the sense in which the word was used in *Kissinger*. USDA cites nothing to support its claim in this regard.[10] Although the agency may be referring to technical "records" designations that it has made under the FRA, *see* 44 U.S.C. § 2901, designations under that statute, as we have noted, do not determine a document's status under FOIA. Nor is there any indication that the *Kissinger* Court used the term "files" in a technical sense. The Court found that Kissinger's White House records did not become part of the State Department's files simply because they were "stored in his office" at the Department, a matter of "mere physical location." 445 U.S. at 157. As we explained in *Bureau of National Affairs*, *Kissinger* held that "the mere physical transfer of [Kissinger's] documents to the State department . . . did not by itself render them 'agency records.'" 742 F.2d at 1489.

The USDA calendars, by contrast, were not just "stored" in their authors' offices, but were accessed and updated on a daily basis. Indeed, although not dispositive, the technological changes in the period since Assistant Attorney General Baxter kept his appointments in paper calendars are not without significance. The technologically savvy USDA officials kept

---

[10]USDA cites two exhibits to its Motion for Summary Judgment, but neither addresses the point. *See* Appellee's Br. 9 (citing "MSJ Exhibits 2 and 3").

their calendars "on the FSIS computer system," Letter from USDA to CFA at 1, thus necessarily subjecting them to the control of that system's administrators. At a minimum, this suggests that USDA had more "control" over its officials' calendars than the Justice Department had over Baxter's.

In any event, even if the USDA calendars never entered USDA's files, that would not decide the question before us. In *Bureau of National Affairs*, the court found that neither the desk calendars nor the daily agendas were "placed into agency files." 742 F.2d at 1494. Nonetheless, the latter were held to be "agency records." *See id.* at 1495.

3.    As in *Bureau of National Affairs*, with creation, possession, and control not dispositive in determining whether the calendars are "agency records," we must shift our attention to the manner in which the documents were used[11] within the agency. *See* 742 F.2d at 1492 ("Where, as here, a document is created by an agency employee, consideration of whether and to what extent that employee used the document to conduct agency business is highly relevant for determining whether that document is an 'agency record' within the meaning of FOIA."); *see also id.* at 1490-91.[12] Here, the calendars of the five most

---

[11]We focus on the manner in which the documents were used, rather than on the subjective "intent of the creator of [the] document," because the Supreme Court has rejected reliance upon the latter. *Tax Analysts*, 492 U.S. at 147; *see id.* at 147-48 (stating that a "*mens rea* requirement is nowhere to be found in the Act [, and that] discerning the intent of the drafters of a document may often prove an elusive endeavor").

[12]As *Bureau of National Affairs* noted, the case law regarding "agency records" "cannot be compartmentalized rigidly into either a 'control' or a 'use' analysis." 742 F.2d at 1490; *see id.* (stating that "'control'" may have "'no precise definition and may well change as

senior USDA officials have use characteristics that mirror those *Bureau of National Affairs* found critical in determining that Baxter's daily agendas were "agency records."

First, Baxter's agendas were used to "inform[] other staff of Mr. Baxter's whereabouts during the course of a business day so that they could determine Mr. Baxter's availability for meetings." 742 F.2d at 1496. Similarly, the USDA officials' affidavits state that their calendars were used to "better communicate about [their] availability, to prevent, among other things, double booking of periods of time." *E.g.*, McKee Aff. ¶ 9. Indeed, some of the redacted calendars submitted for our review contain not only their own subjects' schedules, but also notations regarding the whereabouts of others, such as when colleagues were traveling outside the office.[13] And each indicates when the subject official was scheduled to meet with his or her colleagues, as well as (where not redacted) with industry representatives.[14]

---

relevant factors assume varying importance from case to case.'" (quoting *Crooker v. United States Parole Comm'n*, 730 F.2d 1, 5 (1st Cir.1984))). At several places in the opinion, the court suggested that the extent to which an employee uses a document for agency business is an indicator of the extent of agency control over the document. *See* 742 F.2d at 1491-93.

[13]*See, e.g.*, Pierson Calendar, Oct. 6, 2003 (J.A. 90) (containing notation: "Elsa Murano Traveling" (capitalization altered)); Murano Calendar, Mar. 4, 2003 (J.A. 73) (containing notation: "Merle Pierson Traveling" (capitalization altered)).

[14]*See, e.g.*, Murano Calendar, Oct. 31, 2002 (J.A. 55) (indicating briefing by Tyson Foods representative for Murano, Pierson, and McKee).

Second, and consonant with their use in facilitating the scheduling of agency business, *Bureau of National Affairs* stressed that a distinguishing characteristic of Baxter's agendas was that they were "*distributed* to other employees," rather than "retained solely for the convenience of the individual officials." 742 F.2d at 1496 (emphasis in original). Employing the same word, the USDA officials declared that their calendars were "distributed" to other agency employees. *E.g.,* McKee Aff. ¶ 9. Moreover, as with Baxter's agendas, which were distributed to "top staff within the Antitrust Division," 742 F.2d at 1487, the calendars of the five senior USDA officials were distributed to top FSIS staff. Administrator McKee's calendar, for example, was distributed to the "Senior Management Council," which consisted of the "Assistant and Deputy Administrators for FSIS," as well as to his special assistant and secretaries. McKee Aff. ¶ 9.[15] With the exception of Assistant Administrator Derfler's calendar, the calendars of the other officials had similar distribution lists. *See supra* notes 4 & 5.

At oral argument, counsel for USDA contended, for the first time, that the affidavits' use of the word "distributed" was misleading because the USDA officials' calendars were not printed and physically distributed to the listed recipients, but instead simply made available on the recipients' computers. *See* Oral Arg. Tape at 12:00. Although this fact does not appear in the record below, we do not doubt its truthfulness. However, there does not appear to be any practical difference between the former practice of distributing information in printed form on hard copies and the modern practice of allowing others access through network computers. In any meaningful sense, the USDA calendars were electronically "distributed" to the listed

---

[15]According to its organization chart, FSIS currently has eight assistant administrators.

recipients and were used by them to schedule agency meetings and prevent conflicts.[16]

Our focus on use helps to ensure that a document subject to disclosure under FOIA is an "'agency record' and not an employee's record that happens to be located physically within an agency." *Bureau of Nat'l Affairs*, 742 F.2d at 1493 (citing *Kissinger*, 445 U.S. at 157). Unlike Secretary Kissinger's documents, which were merely "stored in his office" and "not used by the Department for any purpose," 445 U.S. at 157, the USDA calendars were continually updated and used to conduct agency business. And unlike "a personal diary containing an individual's private reflections on his or her work -- but which the individual does not rely upon to perform his or her duties," 742 F.2d at 1494, the five USDA calendars were in fact relied upon by both their authors and their authors' colleagues to "facilitate[] the day-to-day operations of the" FSIS, *id*. at 1495. *Cf. Gallant*, 26 F.3d at 171 (holding that letters sought in a FOIA request were personal rather than "agency records" because they were created for a "purely personal objective" and

---

[16]*Bureau of National Affairs* did draw a distinction between the physical distribution of Baxter's agendas on the one hand, and the "occasional[] . . . access" that Baxter's immediate staff had to his desk calendars on the other. 742 F.2d at 1487; *see id*. at 1495-96. That distinction makes sense: the fact that access to Baxter's desk calendars required obtaining entry into Baxter's or his secretary's personal areas (the desks on which the calendars sat), and that such access was only episodic, reinforced the conclusion that Baxter retained tight control over the calendars and that their principal use was personal. Allowing others to have routine computer access to a calendar, however, is more like distributing hard copies than it is like permitting occasional glances at a document on a desk. In allowing computer access, the official surrenders personal control over the document and indicates that it will be used by others to plan their own workdays.

neither the author nor other employees "reli[ed] on the correspondence to carry out the business of the agency").

USDA protests that, because the calendars contain personal as well as business entries, they cannot be considered "agency records." There is no doubt that "the presence of such information may be relevant in determining" the use of a document. *Bureau of Nat'l Affairs*, 742 F.2d at 1496. But as we said in *Bureau of National Affairs*, the "inclusion of personal information does not, by itself, take material outside the ambit of FOIA." *Id.* Were that not true, an official could avoid disclosure of the only documentation of a meeting held with industry officials during the pendency of a rulemaking -- the very information that CFA seeks in this case -- simply by adorning the document with personal entries. In *Bureau of National Affairs*, we held that Baxter's daily agendas were "agency records," notwithstanding that the "personal information contained in the agendas [was] identical to that found in Mr. Baxter's appointment calendars," which we found to be personal records. *Id.* at 1496. The distinguishing factor was that the agendas were "distributed to staff" for their "use in determining Mr. Baxter's availability for meetings," while the calendars were "created for the personal convenience of [Baxter] so that [he] could organize both [his] personal and business appointments." *Id.* The calendars of the five senior USDA officials are indistinguishable from Baxter's agendas in that regard, and, accordingly, USDA has failed to "sustain[] its burden of demonstrating that the documents requested are not 'agency records.'" *Gallant*, 26 F.3d at 171.

This is not to say, of course, that the officials' personal calendar entries must be produced along with those relating to agency business. To the contrary, both sides agree that the personal entries may be redacted, and we so held in *Bureau of National Affairs*. *See* 742 F.2d at 1496 ("The personal

information contained in the agendas . . . may be redacted from the copies made available to BNA."). CFA does not seek information about the USDA officials' lunches with friends or trips to the dentist; it simply wants to know "what the[] government is up to," a goal that is in accord with the "basic policy" of FOIA. *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted). That documents must be redacted to protect personal information does not contravene the conclusion that they are "agency records."

4. Finally, we address the sixth USDA calendar -- that of Assistant Administrator Derfler -- which provides a counterpoint to the above analysis. While, like his more senior colleagues, Derfler "distributed" his calendar "to better communicate about [his] availability," he distributed it only to his "secretary and any temporary secretaries that filled in for [his] permanent secretary." Derfler Aff. ¶ 9. This places Derfler's electronic calendar on the same side of the line as Assistant Attorney General Baxter's desk calendars, which were similarly distributed only to his secretary, and which *Bureau of National Affairs* held were not "agency records."

As the court explained, "use of the documents by employees other than the author is an important consideration" in ensuring that personal papers are not swept "into FOIA's reach." *Bureau of Nat'l Affairs*, 742 F.2d at 1493. "An inquiry is therefore required into . . . the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency." *Id*. In this case, there is no evidence that "other employees" (apart from his secretary) relied on Derfler's calendar. Rather, like Baxter's calendars, it was "not *distributed* to other employees." *Id*. at 1496 (emphasis in original). And just as that fact "distinguish[ed]" Baxter's desk calendars from

his daily agendas, *id.*, so, too, it distinguishes Derfler's electronic calendar from those of his superiors.

IV

For the foregoing reasons, we affirm the district court's judgment that the electronic calendar of Assistant Administrator Derfler is not an "agency record."  For the same reasons, however, we reverse the court's judgment that the calendars of the other five senior USDA officials are not "agency records."

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring:

While I concur in the majority's holding that five of the six calendars are "agency records" and thus subject to disclosure under FOIA and that Derfler's calendar is not, I do so reluctantly because I believe the majority places too much stock in *Bureau of National Affairs, Inc. v. United States Department of Justice* (*BNA*), 742 F.2d 1484 (D.C. Cir. 1984), and leaves some key questions unanswered.

The value of *BNA* as precedent is, I believe, diminished after the United States Supreme Court's decision in *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989). In *BNA*, the court relied heavily on the authors' purpose in creating the documents. It was primarily for that reason that the court determined that Baxter's daily agendas were "agency records" but his appointment calendars were not. The daily agendas were created "to inform the staff of Mr. Baxter's availability," *BNA*, 742 F.2d at 1495, whereas the appointment calendars were created for Baxter's "personal convenience," *id.* at 1496. After *BNA*, however, the Supreme Court determined that the author's intent is irrelevant to whether a document is an "agency record." In that case, the agency argued that the documents were not prepared to be relied upon in agency decisionmaking and therefore were not "agency records." Rejecting the argument, the Court noted, "This argument, however, makes the determination of 'agency records' turn on the intent of the creator of a document relied upon by an agency. Such a *mens rea* requirement is nowhere to be found in the Act." *Tax Analysts*, 492 U.S. at 147. *Tax Analysts* thus appears to have rejected the rationale used in *BNA*. In light of *Tax Analysts*, *BNA*'s utility as a "template," maj. op. at 9, is, to me, questionable.

There is another reason I believe *BNA* is not the "tight fit" the majority describes. It relies on *BNA* without thoroughly addressing the difference between the paper documents in *BNA*

and the electronic data here. For instance, the majority assumes without record support that, because the calendars were entered on the agency's computer system, they are "necessarily subject[ed] . . . to the control of that system's administrator" and therefore, presumably, agency records.[1] Maj. op. at 13. But *BNA* is not authority for the notion that a calendar entered on a computer belonging to the agency means that the agency has "control" over it. *Cf. Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) ("Thus, appellant's suggested test that employing agency resources, standing alone, is [sic] sufficient to render a document an 'agency record,' is inconsistent with governing precedent."). In any event, the majority retreats from its "control" discussion in asserting that "even if the USDA calendars never entered USDA's files, that would not decide the question before us." *Id.* More important, in the post-*BNA* age, virtually every document is entered on a computer system. But *BNA*'s emphasis on "distribution" does not transfer all that easily into the paperless world and that is because "distribution" does not equate to "access." The distribution of the daily agendas in *BNA* differentiated them from the appointment calendars which were simply available to certain personnel who

---

[1] The majority's discussion of control makes a distinction based on whether the calendars were maintained on the agency's server or on the hard drive of the author's office computer. *See* maj. op. at 12–13. It cites to a letter the USDA sent to CFA, in which the USDA indicated that the authors maintained their calendars "on the FSIS computer system." *Id.* (citing Letter from USDA to CFA at 1). Nevertheless, each author indicated in his affidavit that his calendar was maintained "on the computer system in *my* office." *E.g.*, McKee Aff. ¶ 6 (emphasis added). If each calendar was in fact stored "on the computer system in [the author's] office," then control seems to cut against the finding that the calendar is an agency record, that is, the author intended to maintain control over it.

could "access" Baxter's desk and the OMB official's desk. Similarly, the personal calendars here were available to certain personnel who could "access" the six USDA officials' computers. If, after entering his personal calendar on his computer, each of the six had clicked "send" to those with access, that action might more closely equate to electronic "distribution" and the calendars would then resemble the *BNA* daily agendas. If the keystone of an "agency record" is whether an "employee used the document to conduct agency business," *see BNA*, 742 F.2d at 1493, merely making a document "available"—as opposed to directing ("distributing") the document to others in the agency—does not, it seems to me, make likely the use of the document to conduct agency business.

The majority does not answer two significant questions, namely how many people must the author "distribute" his calendar to for it to be an agency record and does it make a difference to whom the calendar is distributed? The answer to the first may lie somewhere between one—Derfler distributed his calendar to his secretary—and 11—McKee distributed his calendar to 11 officials, the fewest recipients of the five officials whose calendars the majority labels "agency records."[2] Moreover, the majority apparently believes that "distribution" to one's secretary is different from "distribution" to an equal or superior but does not explain why. *See* maj. op. at 18. These questions warrant further explanation because the majority treats

---

[2]Murrano may have "distributed" her calendar to fewer people than McKee but her affidavit does not reveal the exact number of individuals with access. She avers that in addition to her confidential assistant, executive assistant, and special assistant, Terry Nintemann, Dani Schor, and the Office of the Administrator received access to her calendar. Murrano Aff. ¶ 8–9. It is unclear how many people in the Office of Administrator had access.

them as dispositive. In addition, whether 11 is too many under *BNA* is unknown because *BNA* does not include numbers in its "top staff" description. *BNA*, 742 F.2d at 1495. Perhaps *BNA* does not quantify "top staff" because it would then have to decide exactly where a *quantitative* difference (number of personnel with access to calendar) becomes a *qualitative* difference ("distribution"). Whether this is logically "doable" seems to have also vexed the majority here.

Finally, I would suggest precedent other than *BNA* provides a better guide to decide this case. In *Tax Analysts* the Supreme Court looked to two factors in deciding whether the documents were agency records: (1) whether the agency created or obtained the document and (2) whether the document was within the agency's control. *Id.* at 144–46. Even after *Tax Analysts*, we have continued to analyze four factors:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004) (quoting *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (in turn quoting *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other ground*, 492 U.S. 136 (1989)) (internal quotation marks omitted)); *see Gallant*, 26 F.3d at 172. Under this precedent, the six calendars look, at least to me, less like agency records.